UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Cathleen Dashnaw</u>,
    Claimant

      v.                                Civil No. 10-cv-456-SM
                                             Opinion No. 2011 DNH 178

<u>Michael J. Astrue, Commissioner</u>,
<u>Social Security Administration</u>,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Cathleen Dashnaw moves to reverse the Commissioner's decision denying her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI, 42 U.S.C. §§ 1381-1383c (the "Act"). The Commissioner objects and moves for an order affirming his decision. For the reasons discussed below, claimant's motion is denied, and the Commissioner's motion is granted.

**Factual Background**

I.   <u>Procedural History</u>.

In April of 2008, claimant filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging

that she had been unable to work since March 31, 2005, due to low back pain, lumbar/thoracic facet joint disease, lumbar/thoracic/ sacral radiculitis, fibromyalgia, asthma, a dislocated tailbone, carpal tunnel syndrome, depression, and anxiety.  That application was denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In March of 2010, claimant, her attorney, and a vocational expert appeared before an ALJ, who considered claimant's application de novo.  Two months later, the ALJ issued his written decision, concluding that claimant retained the residual functional capacity to perform the physical and mental demands of a range of light work.  Although claimant's limitations precluded her from performing her past relevant work, the ALJ concluded that there was still a significant number of jobs in the national economy that she could perform.  Accordingly, he determined that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.

Claimant then sought review of the ALJ's decision by the Decision Review Board, which was unable to complete its review during the time allowed.  Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently,

claimant filed a timely action in this court, asserting that the
ALJ's decision is not supported by substantial evidence and
seeking a judicial determination that she is disabled within the
meaning of the Act.   She then filed a "Motion for Order Reversing
Decision of the Commissioner" (document no. 11).   In response,
the Commissioner filed a "Motion for Order Affirming the Decision
of the Commissioner" (document no. 13).   Those motions are
pending.

II.   <u>Stipulated Facts</u>.

       Pursuant to this court's Local Rule 9.1(d), the parties have
submitted a statement of stipulated facts which, because it is
part of the court's record (document no. 14), need not be
recounted in this opinion.   Those facts relevant to the
disposition of this matter are discussed as appropriate.

**Standard of Review**

I.    "<u>Substantial Evidence</u>" and Deferential Review.

       Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."   Factual findings and credibility
determinations made by the Commissioner are conclusive if

supported by substantial evidence.  See 42 U.S.C. §§ 405(g),
1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health &
Human Services, 955 F.2d 765, 769 (1st Cir. 1991) (holding that
it is "the responsibility of the [Commissioner] to determine
issues of credibility and to draw inferences from the record
evidence.  Indeed, the resolution of conflicts in the evidence is
for the [Commissioner], not the courts").  Consequently, provided
the ALJ's findings are properly supported, the court must sustain
those findings even when there may also be substantial evidence
supporting the contrary position.  See, e.g., Tsarelka v.
Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir.
1988); Rodriquez v. Secretary of Health & Human Services, 647
F.2d 218, 222 (1st Cir. 1981).

    Substantial evidence is "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229
(1938).  It is something less than the weight of the evidence,
and the possibility of drawing two inconsistent conclusions from
the evidence does not prevent an administrative agency's finding
from being supported by substantial evidence.  Consolo v. Federal
Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson
v. Perales, 402 U.S. 389, 401 (1971).

4

II.   <u>The Parties' Respective Burdens</u>.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  <u>See also</u> 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985); <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  <u>See</u> <u>Vazquez v. Secretary of Health & Human Services</u>, 683 F.2d 1, 2 (1st Cir. 1982).  <u>See also</u> 20 C.F.R. §§ 404.1512(g) and 416.912(g).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

> (1)   whether the claimant is engaged in substantial gainful activity;
>
> (2)   whether the claimant has a severe impairment;
>
> (3)   whether the impairment meets or equals a listed impairment;
>
> (4)   whether the impairment prevents the claimant from performing past relevant work; and
>
> (5)   whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  See also 20 C.F.R. § 416.920.  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy, regardless of whether such work
exists in the immediate area in which [she] lives, or
whether a specific job vacancy exists for [her], or
whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  <u>See also</u> 42 U.S.C. § 1382c(a)(3)(B).


With those principles in mind, the court reviews claimant's
motion to reverse and the Commissioner's motion to affirm his
decision.


**Discussion**

I.  <u>Background - The ALJ's Findings</u>.

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory five-
step sequential evaluation process described in 20 C.F.R.
§§ 404.1520 and 416.920.  Accordingly, he first determined that
claimant had not been engaged in substantial gainful employment
since her alleged onset of disability: March 31, 2005.
Administrative Record ("Admin. Rec.") at 12.  Next, he concluded
that claimant suffers from the following severe impairments:
"degenerative disc disease of the thoracic spine and depression."
<u>Id</u>. at 13.  Nevertheless, the ALJ determined that those
impairments, regardless of whether they were considered alone or
in combination, did not meet or medically equal one of the

7

impairments listed in Part 404, Subpart P, Appendix 1.  Admin.
Rec. at 13-15.

Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
a range of light work.[1]  He noted, however, that claimant can
only stand and/or walk for 2 hours, and she can sit for only 6
hours out of an 8-hour work day; she can understand and recall
both simple and complex instructions, but is unable to complete
complex tasks; she cannot have sustained contact with the general
public; and she must avoid hazards in the workplace.  Id. at 15-
16.  In light of those restrictions, the ALJ concluded that
claimant was not capable of returning to any of her prior jobs.
Id. at 20.

---

[2]    "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying on the testimony of a vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Id. at 21.  Consequently, he concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.  Id.

II.  The ALJ's Mental RFC Determination.

Claimant does not challenge the ALJ's determination of her physical residual functional capacity - that is to say, she agrees (or, at a minimum, concedes) that she can perform the physical requirements of a range of light work.  She does, however, assert that the ALJ erred in determining her mental RFC. Specifically, claimant says the ALJ "essentially adopted" the opinions of Dr. Phillips, a non-examining state agency physician. Motion to Reverse (document no. 11) at 7.  She characterizes Dr. Phillips' report as giving too much credence to an examining source who was not a psychiatrist (William Windler, M.D.), while giving too little credence to the only examining source who was a mental health specialist (Francis Warman, Ph.D.).  The court does not agree.

9

On October 1, 2010, Dr. Warman met with claimant and
completed a "Comprehensive Psychological Profile."  Admin. Rec.
at 250-52.  Claimant focuses on two of Dr. Warman's opinions,
citing them as evidence of her disability: first, that "claimant
has some difficulty" in the area of concentration and task
completion; and, second, that claimant "is suffering from a major
depression and posttraumatic stress and . . . is not able to
maintain attendance or follow schedules at the present time."
Id. at 252.

Subsequently, Dr. Phillips completed a Mental Residual
Functional Capacity Assessment ("MRFC") of Ms. Dashnaw and made
clear that he was basing his opinions on "the office notes from
her PCPs, psychiatric references in the somatic [consultative
examination], and a recent psychological [consultative
examination]."  Admin. Rec. at 270.  In other words, Dr. Phillips
appears to have considered all of Ms. Dashnaw's medical records,
as well as her reported activities of daily living (Admin. Rec.
at 157-59, 251-52), in reaching his conclusions.

> The claimant's allegations are largely somatic, but she
> does state that she handles stress "not well" and this
> is supported by the evidence in [her] file.  All
> sources are given weight, with primary weight given to
> the findings at [the two consultative examinations].
> The claimant's [activities of daily living] are given
> more weight than the psychological [consultative
> examiner's] opinions about her functional limitations.

Admin. Rec. at 270.   Dr. Phillips then concluded that:

> The evidence documents overall positive response to
> psychiatric medications, with periodic acute symptoms
> (e.g., Westside 1/10/06).   The difference in her
> presentation at the two recent [consultative exams] is
> understood as being consistent with this pattern.   The
> increased anxiety and depression symptoms reported/
> demonstrated at the psychological CE are therefore
> likely to remit with the continuation of her
> psychopharmacological treatment.
>
> Considering her affective and anxiety impairments only:
>
> A)   She can understand and recall simple and complex
> information;
>
> B)   She can maintain attention for two hours at a time
> and persist at simple tasks over eight- and forty-hour
> periods with normal supervision; her symptoms preclude
> persistence at more complex tasks over time;
>
> C)   She can tolerate the minimum social demands of
> simple-task settings; she cannot tolerate sustained
> contact with the general public;
>
> D)   She can tolerate simple changes in routine, avoid
> hazards, travel independently, and make/carry out
> simple plans.

Id. To the extent claimant asserts that Dr. Phillips' MRFC

assessment was flawed insofar as it "ignored the underlying

report upon which Dr. Phillips purported to based his opinions,"

Claimant's memorandum at 7-8, that argument is not supported by

the record.   Rather, Dr. Phillips considered Dr. Warman opinions,

along with other evidence in the record, including Dr. Windler's

observations of claimant.

Next, claimant assails the ALJ's reliance on Dr. Phillips' report on grounds that the report impermissibly gave more weight to claimant's activities of daily living than the functional limitations described by Dr. Warman.  In explaining his decision to afford "significant weight" to Dr. Phillips' opinions, the ALJ noted that "Dr. Phillips had the opportunity to evaluate a majority of the medical evidence, including the report of the consultative [psychological] examiner, and he is familiar with Social Security Regulations.  His opinion is further consistent with the evidence from treating sources and is supported in the medical record by clinical signs, symptoms, and laboratory findings . . .."  Admin. Rec. at 19.  Naturally, in assessing claimant's ability to engage in work-related activities, both the ALJ and Dr. Phillips were entitled to rely upon claimant's activities of daily living.  And, in this case, the record demonstrates that claimant is able to drive; she awakens each morning at 5:00 AM and goes to a clinic to get Methadone for pain management; she returns home, prepares breakfast, and readies her children for school; she performs some housework and laundry; and she tends to her pets.  She is also able to manage her own money.  Plainly, claimant's ability to engage in those activities, particularly on a routine schedule, is relevant evidence when determining whether she has the mental capacity to concentrate, maintain attendance, and follow schedules.  It also undermines

12

Dr. Warman's conclusion that claimant "is not able to maintain attendance or follow schedules at the present time."  Admin. Rec. at 252.

Finally, claimant suggests that both Dr. Phillips and the ALJ afforded unjustified weight to Dr. Windler's observations about claimant's demeanor, mood, and affect.  Specifically, Dr. Windler noted that, when he evaluated claimant, her "mood, affect, and thinking at the time of the examination seemed normal."  Admin. Rec. at 241.  Although Dr. Windler is not a psychiatrist, he is a medical doctor and plainly qualified to make informed and reliable observations about claimant's demeanor during his examination of her.  And, in turn, both Dr. Phillips and the ALJ were entitled to rely on those observations.

Viewed in its entirely, then, the record provides substantial evidentiary support for Dr. Phillips' conclusion that claimant can "maintain attention for two hours at a time and persist at simple tasks," and "tolerate simple changes in routine . . . and make/carry out simple plans."  Admin. Rec. at 270.  For the foregoing reasons, as well as those set forth in the Commissioner's memoranda (documents no. 11 and 17), the court concludes that the ALJ did not err is affording "significant weight" to the opinions of Dr. Phillips.

III. <u>Step Five - Jobs Claimant Can Perform</u>.

At step five of the sequential analysis, the burden shifts to the Commissioner to show that there are jobs in the national economy that claimant can perform. <u>See</u> <u>Vazquez</u>, 683 F.2d at 2. <u>See also</u> 20 C.F.R. §§ 404.1512(g) and 416.912(g).   The Commissioner concedes that the ALJ erred in determining that there are "light" level jobs in the national economy that claimant can perform.[2]   Nonetheless, he asserts that the ALJ supportably concluded that there is a significant number of jobs in the national economy at the "sedentary" level that claimant can perform.

At the administrative hearing, the vocational expert testified that there are several sedentary jobs that a hypothetical worker with claimant's limitations could perform. She discussed a number of them, Admin. Rec. at 50-51, and, of those, the ALJ specifically found that claimant could perform at least three (each of which has an SVP of 2): addresser (DOT 209.587-010), eyeglass frame polisher (DOT 713.684-038), and

_____

[2]   The ALJ's hypothetical to the vocational expert was flawed insofar as it described an individual who can stand for two hours each workday <u>and</u> walk for an additional two hours each workday (rather than the traditionally phrased "stand and/or walk for up to two hours").   <u>See</u> Admin. Rec. at 49, 56.   In other words, the ALJ's hypothetical was not consistent with his determination that claimant could "stand and walk for [a total] of two hours out of an 8 hour work day."   Admin. Rec. at 15.

table worker (DOT 739.687-182).[3]  Id. at 21.  Although a portion
of the vocational expert's testimony was inaudible (and,
therefore, was not transcribed), this much can be said of the
three jobs identified by the ALJ: there are at least 100 of those
specific jobs available regionally (i.e., New Hampshire and
Vermont) and 30,000 nationally.

Claimant asserts that those numbers - particularly those
relating to regional positions - are too low to be "significant."
She also says that because the vocational expert only testified
about jobs available at the "regional" and "national" level, and
failed to discuss job availability in "several regions of the
country," the ALJ could not rely upon that evidence.  Claimant's
memorandum at 15.

Claimant's latter argument is precluded by the language of
the Social Security Act itself, which provides that a claimant is
not disabled if she can "engage in any other kind of substantial
gainful work which exists in the national economy, regardless of

_____

[3]    Specific Vocational Preparation or "SVP" is defined as "the
amount of lapsed time required by a typical worker to learn the
techniques, acquire the information, and develop the facility
needed for average performance in a specific job-worker
situation."  Dictionary of Occupational Titles, Appendix C,
Components of the Definition Trailer, 1991 WL 688702 (1991).
Here, claimant says she is not capable of performing any jobs
with an SVP higher than 2.  Claimant's memorandum at 20-21.

15

whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A). Plainly, then, the focus of this inquiry is on the availability of jobs within the national economy. The pertinent regulations do not provide otherwise. <u>See</u> 20 C.F.R. §§ 404.1566 and 416.966. <u>See also</u> 20 C.F.R. § 404.1560(c)(2) ("In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do . . ..").

There is, of course, an exception. "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy.'" <u>Id</u>. In this case, however, nothing in the record suggests that the jobs described by the vocational expert are so unusual or unique that they are isolated to a very few distant locations in the country.

The vocational expert testified that more than 30,000 positions exist in the national economy for the three sedentary

jobs identified by the ALJ.[4]  That is a "significant number" of jobs in the national economy.  See, e.g., Vining v. Secretary of Health & Human Services, 720 F. Supp. 2d 126, 137 (D.Me. 2010) (collecting cases and concluding that "numbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held 'significant.'").[5]

Finally, because the court concludes that the jobs identified by the ALJ exist in sufficient numbers in the national economy, it need not address claimant's argument that the three sedentary jobs identified by the ALJ do not exist in sufficient numbers in the local economy.  Parenthetically, however, the court notes that, to date, it has declined to adopt a bright line test for determining what constitutes a "significant number" of jobs in the local economy and, on at least one occasion, declined to hold that 200 jobs in New Hampshire is not a significant number.  See Nabatoff v. Secretary of Health & Human Services,

---

[4]    That number consists of 28,000 addresser jobs and 2,000 eyeglass polisher jobs.  The vocational expert testified that there are additional jobs in the national economy for the position of table worker, but that portion of her testimony was inaudible and, therefore, not transcribed.

[5]    Parenthetically, the court notes that the Vining court also specifically addressed and rejected claimant's assertion that the Medical-Vocational Rules (also known as the "Grid") "contain the conceptual standards against which job numbers can be tested," Claimant's memorandum at 15-16, such as "substantial vocational scope" and "sufficient occupational mobility."  Vining, 720 F. Supp. 2d at 137.

No. 83-cv-501-JD, slip op. at 21-22 (D.N.H. Nov. 30, 1994)
(collecting cases).

## Conclusion

Having carefully reviewed the administrative record
(including the testimony of the vocational expert) and the
arguments advanced by both the Commissioner and claimant, the
court concludes that there is substantial evidence in the record
to support the ALJ's determination that claimant was not disabled
at any time prior to May 25, 2010.  Both the ALJ's RFC
determination (and, in particular, his assessment of claimant's
mental limitations) and his conclusion that there is a
significant number of jobs in the national economy that claimant
can perform are adequately reasoned and supported by substantial
evidence in the record.

For the foregoing reasons, claimant's motion to reverse the
decision of the Commissioner (document no. 11) is denied, and the
Commissioner's motion to affirm his decision (document no. 13) is
granted.  The Clerk of the Court shall enter judgment in
accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

October 24, 2011

cc:  Francis M. Jackson, Esq.
     Karen B. Fitzmaurice, Esq.
     Gretchen L. Witt, AUSA